416 So.2d 1376 (1982)
Johanna Quinn CROWE, Individually and for and on behalf of the minor, Trenton E. Quinn, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 82-108.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
*1377 Baggett, McCall, Singleton & Ranier, Homer C. Singleton, Jr., Lake Charles, for plaintiff-appellant.
Hall, Lestage & Lestage, David R. Lestage, DeRidder, Raggio, Cappel, Chozen & Berniard, Richard B. Cappel, Stockwell, Sievert, Viccellio, Clements & Shaddock, Bernard H. McLaughlin, Jr., Scofield, Bergstedt, Gerard, Hackett & Mount, Benjamin W. Mount, Lake Charles, for defendants-appellees.
*1378 Before FORET, STOKER and DOUCET, JJ.
FORET, Judge.
Johanna Quinn Crowe (plaintiff) brought this tort action, individually and on behalf of her minor son, Trenton E. Quinn (Trent), to recover damages for personal injuries suffered by him, when the Honda ATV (ATV)[1] on which he was riding as a passenger, was struck by an automobile owned and driven by Robert K. King, Jr. (King). Named defendants were: State Farm Mutual Automobile Insurance Company (State Farm), the automobile liability insurer of King; Allstate Insurance Company (Allstate), plaintiff's uninsured motorist insurer; James J. Miller (James Miller) and Joyce Belle Miller (Joyce Miller), the divorced parents of the minor driver of the ATV, Hank Miller (Hank); King; and Fireman's Fund Insurance Company (Fireman's), the automobile liability and homeowners insurer of James Miller.
Plaintiff requested a trial before a jury and the jury returned a verdict finding no negligence on King's part. In addition, the trial court had granted a motion for a directed verdict filed by Fireman's during the trial. The trial court, pursuant to the jury's verdict, rendered judgment in favor of all other defendants, dismissing plaintiff's claims against them. Plaintiff's motion for a new trial was denied, and she was then granted a devolutive appeal to this Court, where she raises the following issues:
(1) Whether the jury committed manifest error in finding no negligence on the part of King;
(2) Whether the jury committed manifest error in finding no negligence on the part of James Miller;
(3) Whether the trial court erred in granting Fireman's motion for a directed verdict;
(4) Whether the jury committed manifest error in finding that Trent was guilty of contributory negligence, and had assumed the risk of his injuries.

FACTS
This action arises out of a tragic accident which occurred on November 4, 1978, near DeQuincy, in Calcasieu Parish, at approximately 9:00 A.M. Hank and Trent were both nine years old at the time of the accident. They were riding the ATV, which had been purchased by James Miller, and were heading south on Pecan Street, located in the Pine Acres Subdivision (a rural subdivision). They approached the intersection of that street with Grape Street, and should have come to a complete stop as there was a stop sign directing traffic on Pecan Street to stop before entering the intersection. They failed to do so and were struck by an automobile being driven by King in an easterly direction on Grape Street.
The impact of the collision hurled the ATV and both boys some fifty feet from the point of impact and caused them to suffer multiple, severe injuries. Hank died two hours later at the Calcasieu-Cameron Hospital. Trent underwent extensive surgery at the same hospital and survived. He was released from the hospital one month later and wore a cast on his right leg for the next few weeks. He has made a good recovery so far. However, at the time of trial, medical testimony indicated that, because of his age and the fact that he had injured a portion of his right thigh where bone growth takes place, his left leg was growing much faster than his right leg. Because of this, he would have to undergo surgery within the next two years to correct this worsening condition. He will suffer a permanent disability in that he will be unable to grow to the height he would have reached had he suffered no injuries, and his right leg will have less strength than it normally would have.

KING'S ALLEGED NEGLIGENCE
Plaintiff contends that the jury committed manifest error in finding no negligence *1379 on the part of King which was a proximate cause of this accident.
Plaintiff's action is brought under the provisions of LSA-C.C. Articles 2315 and 2316. Thus, plaintiff must first show that she probably would not have suffered the injuries complained of but for defendants' conduct.[2]
The evidence shows that King was traveling at approximately 45 miles per hour as he approached the intersection where the accident occurred. Randall Authement, a Louisiana state policeman who investigated the accident, testified that the speed limit on the road on which King was traveling was 55 miles per hour. Thus, King was traveling well within the speed limit. King testified that he knew the intersection between Grape and Pecan Streets existed, but saw nothing as he approached the intersection which caused him any concern. Photographs introduced in evidence show that there is a heavy growth of brush on the left side of Grape Street as one proceeds in an easterly direction down the street and approaches the intersection. It is from this side of Grape Street that the boys entered the intersection from Pecan Street. The photographs also clearly show the presence of a stop sign at the intersection directing traffic traveling in a southerly direction on Pecan Street to stop before entering the intersection.
King testified that he first saw the boys on the ATV when he was approximately thirty to forty feet from the intersection. At that time, he stated that the ATV was approximately six feet from the paved surface of Grape Street. This is consistent with what an alert driver would have seen as shown by the photographs. King stated that he immediately applied his brakes upon seeing the boys and turned his wheels to the right in an attempt to avoid hitting them. This statement comports with a drawing made by Authement of the accident scene.
We find that plaintiff has failed to prove that King engaged in any of the conduct which she contends was a cause-in-fact of this accident. Our review of the record establishes that the jury's finding of no negligence on the part of King is correct.

ALLEGED LIABILITY OF JAMES MILLER
Plaintiff admits, in brief, that James Miller is unable to be held liable for the acts of his son, Hank, by virtue of the divorce decree which awarded the care, custody and control of Hank to his mother prior to the accident. See Flannigan v. Valliant, 400 So.2d 225 (La.App. 4 Cir. 1981), writ denied, 406 So.2d 611 (La.1981).
Instead, plaintiff would have this Court hold James Miller negligent for allegedly violating LSA-R.S. 32:416 which provides:
"§ 416. Unlawful operation by minors; parents responsible
No person shall cause or knowingly permit his child or ward, under the age of fifteen years, to drive a motor vehicle, except a power cycle, and under the age of fourteen years, to drive a power cycle, upon any highway."
Plaintiff relies on Hartman v. Allstate Insurance Company, 271 So.2d 372 (La.App. 4 Cir. 1972), affirmed, 284 So.2d 559 (La. 1973), in support of her contention. We find Hartman to be distinguishable on its facts from the case sub judice. In Hartman, plaintiff was found negligent for granting permission to her daughter to drive her stepfather's stationwagon across La. Highway 40, when she knew her daughter was only 14 years old at the time and was unable to obtain a Louisiana driver's license.
In the instant action, James Miller admitted that he had purchased two ATV's for use by members of his family, including Hank. He testified that, when he was present, Hank was never allowed to ride the ATV on the highway, except along the *1380 shoulder for a short distance to reach a pasture in which he would ride it. He admitted that there was another means of reaching the pasture without having to ride on the shoulder of the highway. He stated that while he was living with Hank and his mother, he was always present when Hank rode the ATV. He instructed Hank that he was to ride it on family property only and nowhere else.
In establishing negligence on the part of James Miller, plaintiff must first prove that but for James Miller's conduct, she would not have suffered the injuries complained of. See Footnote # 2. This she has failed to do. The evidence clearly shows that James Miller allowed Hank to ride the ATV on the shoulder of the highway only to get to the pasture where he would usually ride the vehicle. Hank was forbidden by his father to ride the ATV at any other times on the highway or its shoulder. Hank was forbidden to ride the ATV on Pecan Street, and James Miller had no knowledge that his son was doing so. Thus, there is no conduct of James Miller which can be said to be a cause-in-fact of this accident and the plaintiff's injuries. See Liedtke v. Allstate Insurance Co., 405 So.2d 859 (La.App. 3 Cir. 1981), writ denied, 407 So.2d 748 (La.1981), where this Court discussed causation and LSA-R.S. 32:416.
The jury made no finding as to any negligence on the part of James Miller. We find none.

FIREMAN'S MOTION FOR A DIRECTED VERDICT
Fireman's filed a written motion for a directed verdict after the plaintiff rested her case and the trial court granted the motion. Plaintiff contends that the trial court committed manifest error in doing so.
LSA-C.C.P. Article 1810(A) provides:
"Art. 1810. Directed verdicts; motion to dismiss at close of plaintiff's evidence
A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."
Fireman's motion for a directed verdict set forth a number of specific grounds as the basis therefor. First, that the parents of Hank had been divorced before the accident and that Joyce Miller had been awarded the care, custody and control of him. Thus, Hank's father (Fireman's insured), James Miller, is unable to be held legally responsible for Hank's negligence. Second, that the automobile liability insurance policy issued to James Miller provides no coverage for the ATV. Third, that Hank and Joyce Miller were unable to qualify as insureds under the terms of the homeowners policy. Finally, that no coverage was provided under the homeowners policy issued to James Miller by Fireman's on the DeQuincy property since the policy excluded coverage for bodily injury resulting from an accident involving a recreational vehicle owned by an insured, when the accident occurred away from the residence premises.
The trial court, without reaching the issue of whether Joyce Miller or Hank were insureds under either of the two homeowners policies or automobile liability insurance policy issued to James Miller, granted Fireman's motion for a directed verdict based on exclusions found in those policies. Plaintiff, on appeal, limits her argument as to insurance coverage solely to the homeowners policy issued to James Miller.
Under the heading of "EXCLUSIONS", that policy provides:
"This policy does not apply:
1. Under Coverage EPersonal Liability and Coverage FMedical Payments to Others:

*1381 a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
(1) any aircraft; or
(2) any motor vehicle owned or operated by, or rented or loaned to any Insured; but this subdivision (2) does not apply to bodily injury or property damage occurring on the residence premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises; or
(3) any recreational motor vehicle owned by any Insured, if the bodily injury or property damage occurs away from the residence premises; but this subdivision (3) does not apply to golf carts while used for golfing purposes."
Plaintiff concedes that the ATV was a recreational motor vehicle for purposes of this policy exclusion. However, plaintiff argues that the accident did not occur away from the residence premises. The policy defines the "residence premises" as follows:
"c. "residence premises" means
(1) a one or two family dwelling building, appurtenant structures, grounds and private approaches thereto; or
(2) that portion of any other building occupied as a residence; provided that such premises is used as a private residence by the Named Insured or his spouse but excluding any portion of the premises used for business purposes."
The evidence leaves no doubt that the accident occurred in the intersection of two public roads and away from the residence premises. Thus, the exclusion found in Fireman's policy is clearly applicable and that policy provides no insurance coverage for bodily injury or property damage resulting from the accident.
Campbell v. Mouton, 373 So.2d 237 (La. App. 3 Cir. 1979), sets forth the standards to be used by the trial court in determining whether to grant a motion for a directed verdict. Campbell stated, on page 238, that:
"The motion for directed verdict is a common law procedural device which has only recently found its way into the law of Louisiana through Article 1810 of the Code of Civil Procedure. The purpose of the directed verdict is that "it serves judicial efficiency by allowing the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict." Civil ProcedureWork of Louisiana Legislature for 1977 Regular Session, 38 La.L.Rev. 152, 157 (1977); See also Williams v. Slade, 431 F.2d 605 (5th Cir. 1970)."
We find that the trial court correctly granted Fireman's motion for a directed verdict as the facts and inferences, as shown above, are so overwhelmingly in its favor that reasonable men could arrive at no other verdict than that its policy exclusion was applicable and no coverage for the accident was provided. We find no need, as did the trial court, to make any determination as to whether Hank or Joyce Miller were insureds under this policy, as the result would be the same no matter what the outcome of such a determination, because of the above mentioned policy exclusion.

CONTRIBUTORY NEGLIGENCE OR ASSUMPTION OF THE RISK ON THE PART OF TRENT
Plaintiff contends that the jury committed manifest error in finding that Trent was guilty of contributory negligence and had assumed the risk of his injuries. Cormier v. Sinegal, 180 So.2d 567 (La.App. 3 Cir. 1965), set forth the test for determining contributory negligence on the part of a child on page 569:
"In evaluating whether the child's conduct constitutes contributory negligence, the child is required to exercise only the care expected of his age, intelligence, and experience under the particular circumstances presented to him; in this respect, the obviousness or not of the danger to *1382 one of the child's years, experience, and intelligence is taken into consideration."
Cormier further delineated the test for determining contributory negligence on the part of a child, on page 570, where we stated:
"Young Cormier's left turn under these circumstances thus meets the tests of contributory negligence for such a youngster a "gross disregard of one's safety in the face of known, perceived and understood dangers", Danna v. London Guarantee & Accident Co. [La.App.], cited above, at 147 So.2d [739] 742; an intentional exposure to "obvious danger in connection with non-technical and ordinary objects and situations" within the capacity of the child of that age "to appreciate and realize", Juhas v. American Casualty Co. [La.App.], cited above, at 140 So.2d [676] 679. See also Veillon v. Muffoletto, La.App. 1 Cir., 77 So.2d 118." (emphasis ours.)
The child in Cormier was 12 years old at the time he was injured, when he suddenly turned the bicycle he was riding into the path of an automobile attempting to overtake and pass him.
A nine-year-old may be capable of contributory negligence, but like a twelve-year-old, he is not held to adult standards of comprehension of danger and duty of self-care. Outlaw v. Bituminous Insurance Co., 357 So.2d 1350 (La.App. 4 Cir. 1978), writ denied, 359 So.2d 1293 (La.1978).
The evidence shows that the accident was the sole result of negligence on the part of Hank. Trent was nothing more than a passenger on the ATV, and there was no evidence presented to indicate that he knew that Hank was a reckless or careless driver. Indeed, there was no evidence presented to show that Hank was such a driver.
Jagers v. Royal Indemnity Co., 257 So.2d 806 (La.App. 3 Cir. 1972), affirmed, 276 So.2d 309 (La.1973), held, on page 809, that:
"The rule of White v. State Farm Mutual Automobile Insurance Company, 222 La. 994, 64 So.2d 245 (1963) is still applicable to us, and a guest or passenger in an automobile has the right to place reliance upon the driver and is not required to monitor the operation or pay strict attention to the road, save under special circumstances or conditions which dictate preventive measures by such passenger or guest." (emphasis ours.)
We find that there were no special circumstances present in this case which would have dictated that Trent pay special attention to Hank's driving or to the road conditions. The ATV the boys were riding was capable of achieving speeds of 20 to 25 miles per hour and no more. Trent did admit that he was talking to Hank while Hank was driving. However, he also stated that Hank never looked back and kept his attention focused on the road ahead of him. It is our opinion that Trent's conduct in simply riding as a passenger on the ATV and talking to Hank can in no way be construed as contributory negligence on his part and the jury was manifestly erroneous in finding it to be such.
As to the affirmative defense of assumption of the risk, Dofflemyer v. Gilley, 384 So.2d 435 (La.1980), stated, on page 438, that:
"We stated in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971):
The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard.
It is fundamental that, in order to assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm. Plaintiff must understand and appreciate the risk involved and must accept the risk as well as the inherent possibility of danger because of the risk. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976); McInnis v. Fireman's Fund Insurance Co., 322 So.2d 155 (La.1975); Brantley v. Brown, 277 So.2d 141 (La.1973); Langlois, supra. Assumption of risk is an affirmative defense that must be specially pleaded. La.Code *1383 Civ.P. art. 1005. The burden of proving this defense is upon the defendant. Langlois, supra."
The evidence clearly shows that Trent in no way assumed the risk of his injuries. The risk here was that Hank would fail to stop for the stop sign on Pecan Street and, thus, subject both himself and Trent to the danger of being struck by a vehicle traveling on Grape Street, the favored street. Defendant, Allstate, failed to produce any evidence whatsoever to show that Trent knowingly and voluntarily encountered this risk which caused him harm.
It is our opinion that the jury was clearly wrong in finding that Trent had assumed the risk of his injuries. Thus, Allstate, as the uninsured motorist insurer of Trent's mother (plaintiff), must provide coverage up to its policy limits for the injuries received by Trent.

QUANTUM
Allstate's automobile liability insurance policy, issued to plaintiff, was introduced in evidence. It provides for the following limits of liability: uninsured motoristbodily injury, $10,000.00 each person or $20,000.00 each accident; and, automobile medical payments, $2,000.00 each person. Thus, the limit of liability available to plaintiff is $12,000.00. The evidence shows that plaintiff sustained more than $12,000.00 in special damages and, therefore, is entitled to recover that amount from Allstate.
For the above and foregoing reasons, the judgment of the trial court, rendered pursuant to the jury's verdict, is reversed in part insofar as it dismissed plaintiff's claim against Allstate. Judgment is hereby rendered in favor of plaintiff and against Allstate, ordering Allstate to make available to plaintiff its uninsured motorist and automobile medical payments coverages up to its policy limits.
The trial court's judgment is affirmed in all other respects.
All costs of this appeal, and in the trial court, are assessed equally between plaintiff-appellant and defendant-appellee, Allstate.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] An ATV is an all terrain vehicle usually designed for use in areas other than on the public roads and streets. In this case, the ATV was what is commonly known as a "three wheeler" motor bike.
[2] See Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3 Cir. 1982); writ denied, 412 So.2d 99 (La.1982); Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3 Cir. 1981), writ denied, 410 So.2d 760 (La.1981).