444 So.2d 1357 (1984)
Lou Willie SIMMONS, Plaintiff-Appellee,
v.
Haas WHITTINGTON, Jr., et ux., Defendants-Appellants.
No. 15876-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Writ Denied March 23, 1984.
*1359 Theus, Grisham, Davis & Leigh by Brian E. Crawford, Monroe, for defendants-appellants.
Wright & Hennen by Dennis Hennen, Monroe, for plaintiff-appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
PRICE, Judge.
Defendants appeal the trial court judgment in this wrongful death and survival action casting them with liability for the drowning death of plaintiff's nine-year-old son. This suit by the mother of the deceased child was consolidated for trial and on appeal with the wrongful death and survival action filed by the child's father, 444 So.2d 1361, in which a separate judgment will be rendered by this court on this day. Defendants contend the trial court erred in finding them negligent in maintaining an attractive nuisance, in finding their negligence was the legal cause of the drowning, in failing to find the decedent, his mother, and his grandfather negligent, and in failing to apply comparative negligence.
There is no serious dispute regarding the essential facts of this tragic occurrence. Defendants constructed an aboveground swimming pool in the back yard of their residence on Oregon Trail in Monroe in the summer of 1981. The prefabricated pool was circular in shape with four-foot walls. Following the manual which accompanied the pool, Mr. Whittington set the frame of the pool approximately one foot below ground level. Leaving the outer edge of the pool at a depth of four feet, he dug out the bottom of the pool gradually sloping the depth. The water level around the outside edge of the pool was about three and one-half feet with a five- to six-inch allowance between the top of the frame and the water. At the deeper end of the pool, he dug out a kidney-shaped area approximately twelve feet across and four feet in length in which the depth of the pool sharply increased to at least five feet eight inches. The only indication of the depth of the pool was a sign on the inside of the frame at the shallow end showing a depth of four feet.
The neighbors on either side of defendants had constructed fences in their back yards along their property lines. Mr. Whittington had begun a fence across the rear of his yard but it was not completed and did not form a barrier, nor was there anything else to the rear of defendants' property to bar entry into the pool area. The street side of the lot was also unfenced.
Michael Wilson lived a few houses down the street from the Whittingtons with his mother, grandfather, brothers, and sisters. Theirs was a typical residential neighborhood with an average number of children. Michael's mother, Mrs. Simmons, worked for General Motors in Shreveport and left the children in the care of her father, Granville Wilson, while she was away working during the week. Michael did not know how to swim. His mother testified she had warned him to stay away from the drainage canal behind their house, which was the only water hazard of which she was aware in the area. Both Mrs. Simmons and Mr. Wilson disavowed any knowledge of the existence of the Whittington's pool.
The Whittingtons left their residence at about noon on July 2, 1982, to spend the weekend out of town. In the early afternoon, officers of the Monroe Police Department responded to an emergency call reported as a drowning at 616 Oregon Trail. Two officers arrived in separate vehicles and ran between the houses to the Whittington's back yard. The water in the pool appeared somewhat unclear to them but they could see the form of a child on the bottom of the pool. One of the officers entered the water and slipped unexpectedly into the deep section in the rear of the pool. Michael's body was retrieved from this area and, upon removing him from the pool, the officers determined he was dead.
Heath Jones, age six, was the only witness to the drowning. He testified in his deposition his brother had told him the pool was deep. He said he told Mike to stay out *1360 of the pool because it was deep, but Mike got in anyway, saying, "It ain't too deep for me." He initially hung on the side of the pool where the depth was three and one-half feet (he was about four feet tall), but eventually began to venture out toward the middle of the pool. He stepped off the ledge into the deep water and sank.
The trial judge found the pool contained a danger not obvious to an immature, and less observant, person although it might be detectable by an older, more experienced individual. He held defendants breached their duty to protect neighborhood children from exposure to the dangers posed by their pool by taking measures to prevent access to their property. He further found no contributory negligence on the part of Michael's mother and grandfather. We affirm the trial court judgment for the following reasons.
There is no question that this recreational pool erected by defendants was attractive and alluring to children. In fact, testimony at trial indicated that Mrs. Whittington had asked children to leave the area in the past. They therefore should have been aware that children would be attracted to the backyard pool in their absence and also aware of the danger posed by the configuration of the pool bottom.
As pointed out by the Louisiana Supreme Court in Guillot v. Fisherman's Paradise, 437 So.2d 840 (La.1983), the creation or maintenance of an unreasonable risk of injury to others gives rise to actionable negligence. The seriousness as well as the likelihood of the harm that may be caused is relevant in determining whether the risk is unreasonable.
Exposed pools or bodies of water with no enclosure or barricade present a great risk of drowning to young children because of their natural attraction to such areas. Guillot v. Fisherman's Paradise, Inc., supra; Saxton v. Plum Orchards, Inc., 215 La. 378, 40 So.2d 791 (1949).
This swimming pool was located in a residential neighborhood populated by many children. Although defendants had begun construction of a fence in the back of their lot, the enclosure was not completed and the defendant's back yard was easily accessible from both the street and the back of the house. Nor did defendants take any precautions to warn of the variances of depth within the pool itself. These defendants should have known that, in their absence, children would be likely to make use of the pool, but they provided no protection from the danger although a fence or other enclosure sufficient to keep children out would have easily eliminated the risk of drowning. Furthermore, they made no effort to inform those unfamiliar with the pool of the true depth at the various levels even though to the casual observer it appeared to be an ordinary aboveground pool four feet in depth. The officers responding to the drowning report both mistakenly believed the pool was of a level four-foot depth all the way across until Officer Whitfield, who stands at least 5'11" tall, went in the pool to retrieve the body and found the water over his head in the deep end of the pool.
A complete enclosure of the backyard area and warning of the true depth of the pool are simple precautions which would have been taken by a reasonable person to protect against the risk of drowning. Under the circumstances defendants breached their duty to protect others from the risk of injury presented by their construction and maintenance of this backyard pool.
Defendants further argue that contributory negligence of both the child and the mother bars recovery here. Regarding the child's negligence, we recognize that a nine-year-old child may be capable of negligence. However, like a twelve-year-old, he will not be held to adult standards of the duty of self-care and comprehension of danger. Crowe v. State Farm Mutual Automobile Insurance Co., 416 So.2d 1376 (La.App. 3d Cir.1982). A child is required to exercise only the self-care expected of his age, intelligence, and experience under the particular circumstances presented to him. Crowe v. State Farm, supra; Cormier v. Sinegal, 180 So.2d 567 (La.App. 3d Cir.1965).
*1361 We agree with the trial court that the dangers inherent in this pool were to a substantial degree hidden from one who had never before been in it. While Michael was aware he could not swim, upon first entering the pool he was able to stand on the bottom. He was obviously unaware that the same was not true for the entirety of the pool. It appeared to be an aboveground pool of uniform depth and there were no contrary indications. A child's carelessness in entering a pool with which he is unfamiliar is one of the risks against which the pool's owner has a duty to take precautions. The risk encountered here is clearly encompassed within the duty not to create an unreasonable risk of harm in a neighborhood peopled by inquisitive and impulsive youngsters.
Nor do we find the parental supervision substandard under the circumstances of this case. The party relying on the defense of contributory negligence has the burden of proving it. Smolinski v. Taulli, 276 So.2d 286 (La.1973). Both mother and grandfather testified they were unaware of the Whittington's pool. Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence. A parent is required to use reasonable precautions in accord with the conduct of reasonably prudent persons faced with similar circumstances and conditions. Smolinski v. Taulli, supra. Defendants have not shown that Mrs. Simmons failed to make reasonable provisions for the supervision of her children. In light of her lack of knowledge of the backyard pool's existence, the danger of Michael's drowning in it was unforeseeable. Thus no contributory negligence may be attributed to these plaintiffs.
Plaintiffs have answered defendant's appeal seeking an increase in damages, contending the trial court abused its discretion in awarding general damages of $70,000 to the mother, with whom the child resided, and $40,000 to the father, who lives in Houston and visited with Michael frequently. The proper award in each assessment of damages depends on its own peculiar set of facts and circumstances. The trial court is afforded much discretion in an award of general damages and, upon appellate review, may not be disturbed unless the record reveals a clear abuse of that discretion. La.C.C. Article 1934(3); Reck v. Stevens, 373 So.2d 498 (La.1979). Although we recognize the distress one must endure at the loss of a child, this court declines to disturb the trial court awards in this case inasmuch as the evidence was weighed by this trier of fact firsthand and we see no abuse of discretion in his determination of the quantum which will compensate each plaintiff.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against defendants-appellants.