457 So.2d 303 (1984)
Harry THOMPSON, Jr., et ux., Plaintiffs-Appellants,
v.
Dr. Dabney M. EWIN, et al., Defendants-Appellees.
No. 83-945.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
Writ Denied November 26, 1984.
*304 Carol J. Aymond, Jr., Bunkie, for plaintiffs-appellants.
Gold, Little, Simon, Weems & Bruser, Eugene J. Sues, Alexandria, for defendants-appellees.
Before FORET, STOKER and KNOLL, JJ.
FORET, Judge.
Plaintiffs, Harry Wayne Thompson, Jr. and Dorothy Jean Goff, brought this action for damages for the wrongful death of their son, Harry Wayne Fikes, who drowned in a swimming pool owned by the defendants, Dr. and Mrs. Dabney M. Ewin. Also made a defendant is the Ewins' liability insurer, Continental Insurance Company. From a judgment rejecting their demands, the plaintiffs have appealed. At issue on appeal is the liability of the defendants.

FACTS
Dr. Ewin is a medical doctor who practices surgery in the New Orleans area. He and his wife own a home in a rural part of Rapides Parish, only a few miles north of Cheneyville, Louisiana. The home is fronted *305 by La. Highway 71 and is situated about 200 yards from that highway. To the rear of the home is a small body of water known as "Bayou Boeuf". The area around the house consists primarily of agricultural fields, with very few residential homes in the immediate vicinity. Since the Ewins are away from this area much of the year, the home is maintained by the Greenwood Planting Company, a corporation in which Dr. Ewin and his brother are the controlling stockholders.
The Ewins constructed a swimming pool immediately adjacent to the east side of the home about three years prior to the accident. Although the pool is unfenced, it is shielded from public view by the house on the west side, and by shrubbery on the highway and bayou sides. The only open view of the pool is from the agricultural fields located on the east side of the home. The pool is rather unextraordinary, with a diving board and ladder on the deep end of the pool and steps in the shallow end of the pool. Although there are lifesaving and floatation devices around the pool, they were locked up behind a screen porch at the time of the accident.
Mr. Thompson, an employee of Greenwood Planting Company at the time of the drowning, and Ms. Goff lived with their family in a home located about one-fourth mile west of the Ewin home. The plaintiffs' home, like the defendants', was situated between La. Highway 71 and Bayou Boeuf. The two homes were not immediately adjacent to each other, there being several houses situated between them.
On August 25, 1982, the plaintiffs' nine-year-old son, Dennis Fikes, was playing with friends at a neighbor's home. Jeffery Fikes, ten years old, and Harry Wayne, eleven years and eight months old, went to the neighbor's home to retrieve their younger brother. On their way back, the boys traveled through one of the agricultural fields located on the eastern side of the Ewin home. At the suggestion of one of the brothers, the three boys decided to investigate the defendants' pool.
After only a few minutes at the pool, Harry Wayne fell in. Jeffery attempted to jump in and save his older brother, but was unsuccessful. Jeffery and Dennis then threw a water hose into the water so that Harry Wayne might grab hold and the two could pull him to safety. Unfortunately, this attempt at rescue failed also. Harry Wayne, being unable to swim, went under water and drowned.
Plaintiffs base their claims on three theories of recovery: negligence, strict liability, and the attractive nuisance doctrine. We shall discuss each in turn.

NEGLIGENCE
Plaintiffs contend that the defendants were negligent because they failed: (1) to construct a fence around the pool; (2) to provide adequate supervision; (3) to provide easily accessible safety and lifesaving devices; and (4) to provide a cover over the pool when not in use.
The test to be applied in determining whether a landowner is negligent is whether, in the management of his property, he has acted as a reasonable man in view of the probability of injury to others. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979). In determining a particular defendant's duty, consideration should be given to the nature of the facility and the dangers presented by it. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976).
Applying the rules of law set forth above, we do not find that the defendants acted unreasonably under these sets of circumstances. The pool was located in a rural area far away from any residential subdivisions or metropolitan area. There was no evidence to indicate that any children of tender years were located in the neighborhood or had been seen around the pool area. For these reasons, the defendants had a justifiable belief that no children would be around their pool absent their permission, and therefore, they had no duty to take the precautionary measures which *306 the plaintiffs argue should have been taken.[1]
It is true that in considering a defendant's duty to a particular person, consideration must be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. Shelton, supra. This rule does not change the results of this case, however.
Although only eleven years, eight months old, the decedent was well aware of the dangers of drowning. He had lived most of his life around Bayou Boeuf and was instructed by his parents to always wear a life preserver while in a boat on the water. In addition, his parents had warned him to stay away from the Ewin home. The boy was of normal intelligence and could easily understand the dangers of being around a pool without the ability to swim. Although a defendant owes a duty to warn of all unreasonable dangers, he does not have to warn of obvious dangers. The danger of drowning was obvious to the plaintiffs' son.

STRICT LIABILITY
Plaintiffs' next contention is that the defendants should be held strictly liable under LSA-C.C. Art. 2317. This article provides in part:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
In order to recover in strict liability under Article 2317, the injured person must prove that the premises posed an unreasonable risk of injury to others, and that his damage occurred through this risk. Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1975).
The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of every case. Since Article 2317 states general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from a standpoint of justice and social utility. Although a judge may be constrained by the concrete problem before him and the ambit of his limited authority, he nevertheless must consider the moral, social, and economic values as well as the idea of justice in reaching an intelligent and responsible decision. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
The judicial process involved in deciding whether a risk is unreasonable under Art. 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, except that a landowner is not absolved from strict liability by a showing of ignorance of the condition or by circumstances that the defect could not easily be detected. Entrevia, supra. Thus, after imputing knowledge of the condition to the landowner, we must determine whether the condition which existed presented an unreasonable risk of harm. This is determined by weighing the risk and gravity of harm against the social utility of the activity and the cost of prevention. Hunt v. City Stores, Inc. 387 So.2d 585 (La.1980).
The pool in question was in an isolated rural area. It was effectively shielded from the public's view on all sides except one. The one side which remained open was an agricultural field which supported very little public traffic. Thus, the risk that someone may have come over to investigate the pool was slight.
To construct a fence around this pool, considering its location, would have been costly, not only monetarily but esthetically *307 as well. The price of having the pool supervised when not in use would place an unrealistic burden on every pool owner. The defendants' actions in keeping the lifesaving and floatation devices locked up behind a screen porch were done to keep the items from being stolen or being damaged by the outside elements. Finally, to force a landowner to cover his pool whenever the pool is not in use would be so costly and physically burdensome that it would take away much of the attractiveness of owning a swimming pool.
After weighing the risk and gravity of harm against the social utility of the activity and the cost of prevention, we conclude, as did the trial court, that the defendants' pool did not pose an unreasonable risk of harm to plaintiffs' son.

ATTRACTIVE NUISANCE DOCTRINE
Plaintiffs' final contention is that the defendants should be held liable under the attractive nuisance doctrine. This doctrine provides that one who maintains upon his premises a condition which is dangerous to children of tender years by reason of their inability to appreciate the peril therein and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. Saxton v. Plum Orchards, 40 So.2d 791 (La.1949).
The trial court found that few of the elements of the attractive nuisance doctrine had been established and, therefore, rejected plaintiffs' claim under this doctrine. We agree.
Harry Wayne Fikes, although still under the age of twelve, was old enough to appreciate the danger of drowning. As was stated before, he had been instructed by his parents to wear a life preserver when around water. Also, he was intelligent enough to understand the dangers of being around water without the ability to swim. Secondly, the location of the pool and the fact that it was shielded from public view made it unreasonable for the defendants to expect to attract children of tender years to their premises. For these reasons, we find that the attractive nuisance doctrine is not applicable in this particular case.
Because we find as we do, we need not reach the issues of whether plaintiffs' son was guilty of assumption of risk, or contributory negligence. Also, we need not reach the issue of damages.

DECREE
For the aforementioned reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
NOTES
[1] For a different result based on a different set of circumstances, see Simmons v. Whittington, 444 So.2d 1357 (La.App. 2 Cir.1984), writ denied, 447 So.2d 1071 (La.1984).