Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,927-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| TAYLOR S. SOUTHERN AND ASHLEY M. SOUTHERN, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, MATTHEW TAYLOR SOUTHERN | Plaintiffs-Appellants |

versus

| | |
|---|---|
| DR. JOAQUIN ROSALES AND ABC INSURANCE COMPANY | Defendants-Appellees |

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20230628

Honorable Walter Meter Caldwell, IV, Judge

* * * * *

| | |
|---|---|
| LAVALLE B. SALOMON, APLC<br>By: Lavalle B. Salomon | Counsel for Appellants |
| DAVENPORT, FILES & KELLY, LLP<br>By: M. Shane Craighead | Counsel for Appellee,<br>Dr. Joaquin Rosales |

* * * * *

Before PITMAN, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This appeal arises from the Fourth Judicial District Court, Parish of Ouachita, the Honorable Walter M. Caldwell, IV presiding. Appellants-Plaintiffs appeal the trial court's ruling granting a motion for summary judgment filed by appellees-defendants, finding no liability for the injuries and death of appellants' minor child. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On February 16, 2023, husband and wife, Taylor S. Southern ("Taylor") and Ashley M. Southern ("Ashley"), individually and on behalf of their minor son, Matthew Taylor Southern ("Matthew"), filed a petition for wrongful death and survival damages for the injuries Matthew sustained by drowning in his neighbor's pool and his subsequent death from those injuries. Defendants were Dr. Joaquin Rosales ("Dr. Rosales"), the Southerns' next-door neighbor, and ABC Insurance Company, Dr. Rosales' insurer.

The petition alleged that on February 18, 2022, Taylor and Ashley left their home on Forsythe Avenue in Monroe, Louisiana, to drive Ashley to work. When Taylor returned home, he saw his nephew, Griffin Woods ("Griffin"), outside with Naomi Jackson ("Jackson"), an adult relative who was visiting the home, looking for his son Matthew, aged 6. Matthew had been missing for about 15 minutes.

Dr. Rosales lived next door to the Southerns and had a pool in his backyard. Taylor saw that the door to defendant's yard was open; he ran to the pool and saw Matthew at the bottom of the pool. Taylor pulled Matthew from the pool and administered CPR while waiting for paramedics.

Matthew was unresponsive. Matthew was taken to the hospital and placed on a ventilator. He remained on a ventilator for seven days. He was taken off the ventilator and died two days later.

The Southerns alleged that Dr. Rosales was negligent for failing to properly secure the fence and gate to his pool and property, failing to protect children from an attractive nuisance and from an unreasonably dangerous condition, and failing to take reasonably prudent measures for the protection of young children. Defendants answered the petition and denied plaintiffs' claims.

Following discovery, on September 15, 2023, Dr. Rosales filed a motion for summary judgment asking that plaintiffs' claims be dismissed. In his memorandum in support of his motion, Dr. Rosales stated that on February 18, 2022, he and his wife, Cymantha, left their home at 3604 Forsythe Ave. to visit a relative in Mississippi. At that time, Dr. Rosales' backyard was enclosed by an eight-foot tall, plank privacy fence which was accessible by two spring-loaded gates with latching mechanisms. Both gates were secured when the couple left their home on the morning of February 18, 2022. That afternoon, Dr. Rosales received word that a child was found unconscious in the deep end of his swimming pool located in his backyard. Dr. Rosales stated that he was not aware that any children would be present on his property during his absence and neither he nor his wife gave permission for any child to come onto their property.

Dr. Rosales stated that when Taylor and Ashley went to work, Griffin, Taylor's nephew, was the primary custodian of the six minors that resided at the Southerns' home at 3602 Forsythe Ave; the minors were aged 2, 5, 7, 8,

2

10, and 13.[1]  The children were off from school on February 18, 2022, and Griffin was watching them.  Matthew spent the previous night with his grandfather, Daniel Tripp ("Tripp"), who dropped Matthew off with his parents shortly before they left to take Ashley to work.  Before leaving, Ashley told Griffin to bathe, dress, and pack for their five-year-old child to stay with Tripp that evening.  Griffin and the five-year-old did so upstairs.  The only other minors present at the home at that time were a two-year-old, Matthew, and an eight-year-old, who were all downstairs.

Matthew went upstairs, asked Griffin if he could play basketball outside in the driveway, and then went back downstairs.  Tripp returned to the house and left with the five-year-old.  Griffin then searched inside and outside the house for Matthew.  Griffin contacted Tripp and either Taylor or Ashley to see if they had Matthew.  In the meantime, Jackson arrived at the home and assisted in the search.  Taylor came home and saw that the gate to the Rosaleses' backyard was slightly ajar.  Matthew was discovered in the deep end of the pool.

Cymantha provided an affidavit which stated that the front gate to their backyard sat at the right front corner of their privacy fence, was six feet tall, and had a spring-loaded latching mechanism.  She averred that prior to leaving their home on February 18, 2022, she pulled on that gate and the other gate to ensure that they were closed and latched, which was her practice before leaving home.  The Rosaleses returned home the next day and Cymantha took photographs of items that were present in her backyard

_____

[1] At the time they filed their motion for summary judgment, defendants believed Mathew was seven years old when he died.  He was six years old.

3

area that were not there when they left the home the previous day. Several of the photographs that Cymantha took were attached to defendant's motion. They depicted Matthew's personal belongings around the pool, which defendant suggested showed that Matthew was unsupervised for quite some time before he was discovered in the pool.

Griffin gave deposition testimony that he was the primary caretaker of the children, even when Taylor was at home, and the children often did not listen to him. Dr. Rosales stated that Louisiana law did not require that a landowner create and maintain locked barriers around water bodies on his property, especially in relation to unknown and uninvited guests. He also contended that the presence of a body of water did not constitute an unreasonably dangerous condition or an attractive nuisance.

Plaintiffs opposed the motion stating that Dr. and Mrs. Rosales were familiar with the Southern family because they had lived next door to them for several years. Matthew had never been to the Rosaleses' property to swim and their home did not have any "No Trespassing" signs placed on the property. Plaintiffs argued that, while the gate to the backyard of the Rosales' home had a latch on it, it was not locked. Plaintiffs acknowledged that Matthew did not have permission to be on the Rosaleses' property. Plaintiffs argued that Dr. Rosales had a duty to prevent access to his property by installing a lock on the gate to his backyard and pool because there were very young children living next door.

Plaintiffs contended that Matthew was required to exercise only the self-care expected of his age, intelligence, and experience under the circumstances presented to him. A child's carelessness in entering an

4

unfamiliar pool was one of the risks against which the pool's owner had a duty to take precautions. Matthew was unfamiliar with the Rosaleses' backyard and pool, and a lock on the gate would have prevented him from entering the pool.

Plaintiffs stated that for the attractive nuisance doctrine to apply, the following circumstances had to be present: (1) the injured child must have been too young to appreciate the danger; (2) there must have been reason to anticipate the presence of children because of some attraction on the defendant's premises, or some danger where the children had a right to be; (3) the instrumentality causing the injury presented the strong likelihood of an accident; (4) the danger must have been one not ordinarily encountered; and (5) the defendant failed to take reasonably prudent precautions under the circumstances.

Plaintiffs argued that every requisite of the attractive nuisance doctrine was met in this case: (1) Matthew was six years old and too young to comprehend the danger involved in his actions; (2) the pool was located in a residential neighborhood and defendants knew their neighbors had children of various ages; (3) the pool was not inherently dangerous, but it was deadly for a person who could not swim; and (4) Matthew did not face the dangers of falling into a pool on a daily basis. Plaintiffs argued that a lock was all that would have prevented Matthew's death.

Plaintiffs stated that prior to Matthew's accident, there were no problems that indicated that Griffin was incapable of babysitting the Southern children. Plaintiffs attached to their opposition Griffin's deposition testimony, Ashley's affidavit, and Cymantha Rosales' affidavit.

Ashley stated in her affidavit that she had never known Matthew to go over to the Rosaleses' home unaccompanied or without permission.

Following argument, the trial court granted summary judgment stating:

> I think based on the law presented to the court…there is no obligation outside the fact that the gate is closed for it to be locked. I think counsel for the Rosales has adequately pointed out that it begins to become problematic. What about a trampoline? What about a treehouse? Or any uninvited guests that enters a property simply because it was not locked? I haven't seen any case law. I haven't seen any statutory models that require that the gate be locked. …[T]he evidence put into the record is that it was traditionally, the enclosure was maintained traditionally. Mrs. Rosales stated in her affidavit how they handled that. [There has] been no information to dispute that. [Plaintiffs' counsel] has placed on the record the argument, well, it was ajar that day so, it's a question of whether they had actually left it open that day, but Mrs. Rosales says we traditionally did that. It would have been what we would have done. Absent any obligation that they—and I tend to believe that because of the recitation of the facts regarding that when they noted that the gate was ajar that they knew some—that's immediately where they searched because that leads me to believe that they know that typically that gate is shut. That's how they observed it in the past.

On January 25, 2024, the trial court signed a judgment granting Dr. Rosales' motion for summary judgment and dismissing plaintiffs' claims with prejudice. Plaintiffs now appeal.

## DISCUSSION

On appeal, appellant argues that the trial court erred in 1) determining Dr. Rosales' duty as a landowner, whether he acted as a reasonable person when considering the probability of injury to others in the management of his property; 2) finding that there was no material question of fact to show a breach of duty by defendants; and 3) concluding that the attractive nuisance doctrine was inapplicable to the facts of this case.

6

*Motion for Summary Judgment*

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment article further states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La. C.C.P. art. 966(D)(1).

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Dickerson v. RPM Pizza, LLC*, 55,739 (La. App. 2 Cir. 7/17/24), __ So. 3d __, 2024 WL 3434817.

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Dickerson v. RPM Pizza, LLC, supra.*

*Landowner's Duty*

Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element). *Id.*, (citing *Boykin v. Louisiana Transit Co., Inc.*, 96-1932, pp. 8-9 (La. 3/4/98), 707 So.2d 1225, 1230).

Duty is defined as the obligation to conform to the standard of conduct associated with a reasonable person in like circumstances. *Id.* The test to determine if a breach of a landowner's duty has occurred is whether, in the management of his property, he has acted as a reasonable person in view of the probability of injury to others. *Richardson v. ASI Lloyd's*, 50,976 (La. App. 2 Cir. 9/28/16), 206 So. 3d 349; *Collins v. Whitaker*, 29,324 (La. App. 2 Cir. 4/2/97), 691 So. 2d 820. In a negligence action, each inquiry must be affirmatively answered for plaintiff to recover. *Richardson v. ASI Loyd's, supra*.

In *Collins v. Whitaker*, *supra*, the court stated that it is foreseeable that a landowner with a pool will allow others to enjoy it. A landowner or custodian owes a duty to his guests to discover any unreasonably dangerous condition or use of his premises and either correct the condition or warn of its existence. *Socorro v. City of New Orleans*, 579 So. 2d 931 (La. 1991). A swimming pool, when properly used, is not unreasonably dangerous and

does not constitute an unreasonable risk of harm in most circumstances. The danger presented, *i.e.*, the risk of drowning, is an open and obvious one. *Collins v. Whitaker*, *supra*.

In *Richardson v. ASI Loyd's, supra*, the trial court found in favor of the defendant landowner when a minor child drowned in his pool during a pool party. The landowner allowed his girlfriend, Ms. Walton, and her two adult children, in his absence, to host a pool party for children. Ms. Walton could not swim, of which the defendant was aware, but her two adult children could. The defendant knew that the two adult children were typically present when pool parties occurred and that they were present on the day of the party at issue. He also knew that there were adequate life vests available for adults and children at the party, and he told Ms. Walton to be very careful with the children in the pool and insisted that the children not go in the pool without life vests.

Ms. Walton testified that she snapped each child in a life vest and personally put her own life vest on the victim before he entered the pool. Her adult son testified that the minor victim was wearing a life vest when he (the adult son) exited the pool.

This court stated:

> Although the facts of this case are tragic and a very young person lost his life, in deciding this case, the trial court stated that there was no evidence that "but for" Ms. Walton not being a swimmer, this drowning would not have occurred. We also note that, as the trial court pointed out, children drown even when lifeguards are present. The trial court based its decision on reasonable evaluations of credibility and inferences of fact. After review, we cannot say the decision was manifestly erroneous or clearly wrong.

9

Appellees cite *Wiley v. Sanders*, 37,077 (La. App. 2 Cir. 6/13/03), 850 So. 2d 771, *writ denied*, 03-1986 (La. 10/31/03), 857 So. 2d 487, where a 19-year-old drowned in a muddy pond during an unauthorized party hosted by the landowner's son while his parents were away from the home.

This court said in its opinion:

[A property owner] cannot be held responsible for all injuries resulting from any risk posed by his [property], only those caused by an unreasonable risk of harm to others. The absence of an unreasonably dangerous condition of the property implies the absence of a duty.

Under either theory, negligence or strict liability, the plaintiff must prove that the defendant had custody or garde of the thing which caused the damage, that the thing contained a defect (a condition posing an unreasonable risk of harm to the plaintiff), and that this defective condition caused the plaintiff's injuries.

When determining whether a risk is unreasonable, a court is to balance the likelihood and magnitude of the harm and the utility of the thing, while also taking into account a broad range of social, moral, and economic factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct when the accident occurred. Justice and social utility are guideposts, with consideration given to individual and societal rights and obligations. (internal citations omitted).

*Id*. at p. 3, 850 So. 2d at 774.

The pond in *Wiley* was saucer-shaped, becoming gradually deeper toward the middle which was about eight feet deep. The victim was six feet tall. There was no fence around the pond, nor were there any markers or signs designating the various depths of the pond. The only artificial light provided for the pond was from a light in the front yard of the house, which only illuminated part of the pond. A witness testified that on the night of the drowning, there was enough natural light for him to see the other people out in the pond. The landowner did not feel that there was any need to provide a

10

lifeguard because his children were able to swim. He assumed that everyone who went near the pond would exercise good judgment, and he generally told guests not to get in the pond if they could not swim. *Id.*

This court found that the pond did not pose an unreasonably dangerous condition to the 19-year-old victim. This court said, "The only danger presented by the pond was that it contained water. Such a danger would have been open and obvious to Robert Wiley when he entered the pond." *Id.* at p. 8, 850 So. 2d at 776. This court found that the defendant landowner had not breached any duty owed to the victim. This court pointed out that the landowner was not present on the date of the drowning and had no knowledge that his son organized a party at his home. *Wiley v. Sanders, supra.* This court also said that the 19-year-old victim, "had he exercised reasonable care, should have observed that he could drown in a pond filled with water." *Id.* at p. 9-10, 850 So. 2d at 777.

Appellees also cite *Brooks v. Sibille*, 13-1015 (La. App. 3 Cir. 2/12/14), 153 So. 3d 1121, *writ denied*, 14-0543 (La. 4/25/14), 138 So. 3d 648, where the courts found in favor of the defendant landowners. In that case, two 12-year-olds drowned in a murky pond after trespassing on a landowner's property while the landowner was absent.

The Third Circuit stated:

[W]hile defendants had garde over the pond, the only potential danger was the presence of murky water giving rise to undefined depths. Following the reasoning of the *Wiley* court, these are open and obvious dangers that do not constitute unreasonable risks of harm. As such, the defendants did not owe a duty to warn against such hazards.

Since the pond did not constitute an unreasonable risk of harm, the question now becomes whether the defendants breached a duty to act reasonably. The test to determine whether a breach

11

of a landowner's duty has occurred is whether, in the management of his property, he has acted as a reasonable man in view of the probability of injury to others. Here, there is no evidence to support the claim that the defendants breached a duty to act reasonably. While there is evidence to suggest the drowning victims were below average intelligence to potentially deduce the dangers of the pond, these facts are not material as the defendants were not acquainted with these minors and would not reasonably expect them to trespass and swim in the pond without supervision. The defendants were not home during the incident and had no knowledge that [one of the victims] would visit the property or bring other minors with him. To charge the defendants with the burden of guarding against every potential individual of varying intelligence trespassing and drowning goes beyond reasonable levels of justice and social utility. (internal citations omitted).

*Id*. at p. 5-6, 153 So. 3d at 1124-25.

Appellants cite *Simmons v. Whittington*, 444 So. 2d 1357 (La. App. 2 Cir. 1984), *writ denied*, 447 So. 2d 1071 (La. 1984), as being instructive in this matter. In *Simmons v. Whittington, supra*, a nine-year-old, who could not swim, drowned in a neighbor's above-ground pool while the landowner was away from home. The pool was partially enclosed with an incomplete fence, it did not have a uniform depth, and no signs on the pool indicated the change in depth. The child's mother was unaware that her neighbors had the pool. This court found that the landowner had a duty to take precautions against a child's carelessness in entering a pool with which he was unfamiliar. This court said:

There is no question that this recreational pool erected by defendants was attractive and alluring to children. In fact, testimony at trial indicated that Mrs. Whittington had asked children to leave the area in the past. They therefore should have been aware that children would be attracted to the backyard pool in their absence and also aware of the danger posed by the configuration of the pool bottom.

As pointed out by the Louisiana Supreme Court in *Guillot v. Fisherman's Paradise,* 437 So.2d 840 (La. 1983), the creation or maintenance of an unreasonable risk of injury to others gives

12

rise to actionable negligence.  The seriousness as well as the
likelihood of the harm that may be caused is relevant in
determining whether the risk is unreasonable.

Exposed pools or bodies of water with no enclosure or
barricade present a great risk of drowning to young children
because of their natural attraction to such areas.  (internal
citations omitted).

*Simmons v. Whittington, supra*, 444 So. 2d at 1360.

*Wiley v. Sanders, supra*, and *Brooks v. Sibille, supra*, are similar to

this case in that the landowners were not present when the drowning

occurred, and they also had no knowledge that anyone would be present on

their property.  However, the ages of the drowning victims in those cases, 19

years old and 12 years old, can be contrasted with Matthew's young age of 6

years old.  *Wiley v. Sanders, supra*, and *Brooks v. Sabille, supra*, also

involved open ponds that were not enclosed.  Dr. Rosales' pool had an eight-

foot privacy fence and gates that were latched prior to Matthew's tragic

drowning.

Appellants state that this case can be compared to *Simmons v.*

*Whittington, supra*, in that a six-year-old child could access the Rosales'

pool at any time, even though it was enclosed by a fence which contained a

latched gate, and Matthew was unfamiliar with the pool.  We note that, like

the child in *Simmons*, Matthew was a trespasser on the Rosales' property.

However, we point out that in *Simmons*, the neighbor's pool was not fully

enclosed with a fence and neighborhood children had already shown interest

in the pool.  The landowners had directed those children away from their

property.  The Rosales' pool was fully enclosed by a fence with gates that

they kept shut and latched.  There is no indication here that Dr. or Mrs.

Rosales ever had to turn children away from their property due to an interest

in their pool or invited any neighborhood children to their pool. There is nothing in the record that shows that Matthew was aware of the pool prior to the date of his drowning. Matthew's mother stated in her affidavit that she had never known Matthew to go onto the Rosaleses' property unaccompanied. Mrs. Rosales stated in her affidavit that she made sure the gates were shut and latched before they left to go out of town.

Furthermore, La. R.S. 4875.1(A) states in part:

> For the purpose of promoting the health, safety, and general welfare of the community, parish and municipal governing authorities may adopt ordinances regulating the enclosure of residential and commercial swimming pools. The ordinance shall provide for minimum heights for fences or walls enclosing the pool and locking or limited access gates.

Therefore, the state grants municipalities the authority to require that swimming pools be enclosed with fencing and access to pools be restricted by a locked gate. Monroe, La. Code Ordinances § 37-76(i)(2) provides that every swimming pool of 5,000-gallon capacity or greater must be protected by a safety fence of at least 6 feet in height. The ordinance does not require that any gates or access points to pools be secured by locked gates. This court was also unable to find any case law which requires that the landowners of residential swimming pools maintain locked gates or entryways to their pools.

We find that the Rosaleses' swimming pool was maintained in a reasonable manner and did not present an unreasonable risk of harm. The pool was enclosed by an eight-foot privacy fence and gates that were closed and latched at the time the Rosaleses left their property on the date of Matthew's unfortunate drowning. The Rosaleses did not have a duty to install a locking mechanism on the gates to their backyard area in case a

14

child should happen to wander on to their property. "Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence or contributory negligence." *Smolinski v. Taulli*, 276 So. 2d 286, 290 (La. 1973); *Turner v. Caddo Parish Sch. Bd.*, 252 La. 810, 214 So. 2d 153 (1968). Appellants' first two assignments of error lack merit.

*Attractive Nuisance*

For there to be a case under the attractive nuisance doctrine there must appear:

> 1. That the injured child was too young to understand and avoid the danger.
>
> 2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
>
> 3. That there was a strong likelihood of accident.
>
> 4. That the danger was one other than those ordinarily encountered.
>
> 5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.

*Beasley v. Guerriero*, 123 So. 2d 774, 777 (La. App. 2 Cir. 1960).

Generally, the doctrine of attractive nuisance is to be accorded limited application and employed by the courts only with caution. *Woods v. Winn-Dixie Stores, Inc.*, 22-0191, p. 13 (La. App. 1 Cir. 9/16/22), 353 So. 3d 182, 193.

In *Fincher v. Chicago, R.I. & P. Ry. Co.*, 143 La. 164, 78 So. 433 (La. 1918), a railroad was not held liable under the attractive nuisance doctrine for the death of a little girl by drowning in a pool of water on its right of

15

way, which was out of sight and invisible to the child except when trespassing on its tracks.

In *Saxton v. Plum Orchards*, 215 La. 378, 40 So. 2d 791 (1949), the Louisiana Supreme Court found that a pool of water 4 to 10 feet deep constituted an "attractive nuisance" that rendered the owner liable for the death of a four-year-old girl by drowning therein. The pool had vertical banks and contained small timbers, sticks, and marine life. It was clearly visible and readily accessible from nearby streets and dwellings in which numerous small children resided, and it could have been eliminated or fenced at a reasonable expense.

In *Thompson v. Ewin*, 457 So. 2d 303 (La. App. 3 Cir. 1984), *writ denied*, 460 So. 2d 1043 (La. 1984), the property owners were not held liable under the attractive nuisance doctrine to the parents of an 11-year-old boy who drowned in their pool, as the child was old enough to appreciate the danger of drowning, since he was instructed by his parents to wear a life preserver when around water. The court also found that the location of the pool and the fact that it was shielded from public view made it unreasonable for the property owners to expect it to attract children of tender years to their premises. *Id.*

The attractive nuisance doctrine requires that there must be reason to anticipate the presence of children because of some attraction on the defendant's premises or some danger where the children had a right to be. Ashley's affidavit established that she was unaware of any other times that Matthew went onto the Rosaleses' property unaccompanied or without permission. Cymantha Rosales stated in her affidavit that none of the

16

children had permission to go onto the Rosaleses' property and she had no knowledge of them doing so.

The Rosaleses' swimming pool was a standard swimming pool located inside an eight-foot privacy fence with a latched gate. The couple had no reason to expect a six-year-old child to enter their backyard area without supervision and the pool was hidden from public view. Appellants once more cite *Simmons v. Whittington, supra*, in support of their assertion that the Rosaleses' pool constituted an attractive nuisance. We must again point out that the pool in *Simmons* was not fully enclosed by a fence and the property owners had sent curious children away from their pool in the past. That is not the case here. Matthew was a trespasser who entered the Rosaleses' enclosed property without their knowledge or permission. Matthew's mother never saw Matthew enter the Rosaleses' property unaccompanied and the record is devoid of evidence of Matthew's previous interest in the pool. This assignment of error lacks merit, and the trial court did not commit manifest error in granting defendant's motion for summary judgment.

## CONCLUSION

The trial court's ruling granting defendant's motion for summary judgment is affirmed. The costs of the appeal are assessed to appellants.

**AFFIRMED.**