691 So.2d 820 (1997)
Sharon COLLINS, et al., Plaintiffs-Appellants,
v.
J.D. WHITAKER, et al., Defendants-Appellees.
No. 29324-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
*821 W. James Singleton, Shreveport, for Plaintiffs-Appellants.
Charles G. Tutt, Shreveport, for Defendants-Appellees.
Before MARVIN, C.J., and BROWN and CARAWAY, JJ.
BROWN, Judge.
Sharon Collins instituted this suit on behalf of her minor child, Teri Walker Collins, for injuries she sustained when she nearly drowned in J.D. Whitaker's backyard swimming pool at a Labor Day barbecue. Following plaintiffs' presentation of evidence, defendants moved for a directed verdict. The trial court, finding that plaintiffs failed to carry their burden, granted defendants' motion and dismissed plaintiffs' case. We affirm.

FACTS
On Monday, September 5, 1994, J.D. Whitaker and his girlfriend, Constance Diane Pitts, hosted a Labor Day barbecue at Mr. Whitaker's home in Mansfield, Louisiana. Among those attending were Ms. Pitts' sister, Lacretia Harrison, Ms. Harrison's two-year-old daughter, Ms. Harrison's boyfriend, Curtis Jones, Ms. Pitts' three children, Marquita (age 10), Detrin (age 8), and Devry (age 6), and Ms. Pitts' two other nieces, Teri Collins (age 13), and Mimi Collins (age 3).
The Pitts children got permission to swim in Mr. Whitaker's backyard pool. Teri and her sister, Mimi, arrived later than the other children, who were already in the pool. Ten-year-old Marquita asked her mother, Ms. *822 Pitts, if Teri could go swimming. At first, Ms. Pitts told Teri that she could not go swimming. Teri told her aunt that she had taken swimming lessons and that she knew how to swim.[1] Ms. Pitts then gave her permission, with the instruction that Teri was not to go past the rope which divided the shallow and deep ends of the pool.
While the children were swimming, Ms. Harrison and Mr. Jones were seated at the pool's edge and Mr. Whitaker was barbecuing. The barbecue pit was located just outside the fence surrounding the pool area, no more than 15 feet from the pool itself. Mr. Jones stated that he kept his eye on Teri the entire time she was in the pool, except for 10-15 seconds when he glanced away. Mr. Whitaker stated that he too was able to observe the kids in the pool.
Mr. Jones testified that Teri began moving from the shallow to the deep end. She was stepping along the pool's edge, holding onto the side. When Teri got to the rope separating the shallow and deep ends, she ducked under the water, went under the rope and came up on the other side, still holding onto the side of the pool. Mr. Jones looked away for a few seconds, then gazed back and noticed that Teri had moved away from the side of the pool, submerged momentarily and emerged out of the water to push her hair away from her face before going under again. Mr. Jones stated that it seemed to him that Teri was doing fine.
Mr. Jones turned to one of the girls in the pool, whom he believed to be Teri's sister, and asked whether Teri could swim. The response was, "yeah, she's just playing around." After approximately 30 seconds had passed without Teri resurfacing, Mr. Jones stood up, walked to the deep end and looked into the water to make sure Teri was okay. At that time, he noticed that Teri was vomiting; he jumped into the pool and pulled her to the side near the diving board. When he reached the edge of the pool, Mr. Whitaker was already there to help him get Teri out of the water.
Teri was unresponsive when she was pulled from the pool. Mr. Whitaker gave Teri mouth to mouth resuscitation and administered CPR until the ambulance arrived. Teri was first transported to DeSoto General Hospital Emergency Room, then airlifted to LSUMC in Shreveport, where she remained hospitalized for 10 days. She was unconscious for several days and required a ventilator to assist her in breathing. However, upon discharge, Teri was almost fully recovered.
Sharon Collins, Teri's mother, filed suit against J.D. Whitaker and his homeowner's insurer, State Farm Fire & Casualty Co., on June 29, 1995. Trial was held on February 27, 1996. Following the close of plaintiffs' case, defendants moved for a directed verdict pursuant to La. C.C.P. art. 1810. The trial court, finding that plaintiffs failed to carry their burden of proving a breach of duty on the part of Mr. Whitaker, granted the motion and dismissed plaintiffs' suit. It is from this judgment that plaintiffs have appealed.

DISCUSSION
Plaintiffs advocate recovery under alternate grounds of strict liability and negligence. Both theories require proof that the defendant had custody of the thing causing the injury; that it contained a defect, that is, a condition creating an unreasonable risk of harm; and that the defective condition caused plaintiff's injury. Under the negligence approach, plaintiff must also prove that the owner or custodian knew or should have known of the defect. Under strict liability, as the law existed at the time of this accident, plaintiff is relieved of this burden of proving knowledge.[2]
*823 It is foreseeable that a landowner with a pool will allow others to enjoy it. A landowner or custodian owes a duty to his guests to discover any unreasonably dangerous condition or use of his premises and either correct the condition or warn of its existence. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991). A swimming pool, when properly used, is not unreasonably dangerous and does not constitute an unreasonable risk of harm in most circumstances. The danger presented, the risk of drowning, is an open and obvious one.
J.D. Whitaker testified that the swimming pool in his back yard is approximately 20 feet by 32 feet. The depth of the pool is legibly marked on the interior tile of the pool, indicating the three foot or shallow end and the ten foot or deep end. To further identify the deep and shallow ends there is a detachable rope with floaters marking the point at which the grade to the deep end begins. There is a chain link fence approximately five feet from the pool's edge, encompassing the entire pool with a locking gate to prevent any unsupervised swimming.
As did the trial judge, we find nothing to indicate that this pool is unreasonably dangerous. To find otherwise would imply that all commercially built pools of this nature are unreasonably dangerous. This we can not do.
Plaintiffs assert that liability arises from the failure to warn and the lack of proper supervision. Because the pool does not constitute an unreasonable risk of harm, the applicable duty here is that of a reasonable man. Duty is defined as the obligation to conform to the standard of conduct associated with a reasonable man in like circumstances. Fox v. Louisiana State University Board of Supervisors, 576 So.2d 978 (La. 1991). The test to determine whether a breach of a landowner's duty has occurred is whether, in the management of his property, he has acted as a reasonable man in view of the probability of injury to others. Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976); Ladner v. Firemen's Insurance Co. of Newark, 519 So.2d 1198 (La.App. 2d Cir.1988).
J.D. Whitaker, Curtis Jones and Lacretia Harrison all testified that Mr. Whitaker was near the pool barbecuing prior to the accident. In fact, Mr. Whitaker was in such close proximity that when Teri began having difficulty in the pool, he was poolside to assist Mr. Jones in getting her out of the pool.
Aside from Mr. Whitaker, there were two other adults sitting by the pool to supervise. Both Ms. Harrison, Teri's aunt, and Mr. Jones, a Mansfield police officer, testified that they were sitting on the edge of the pool, although not specifically to supervise the children swimming. Further, Mr. Jones testified that as a police officer, he had some training in rescue and CPR. The trial court stated it quite succinctly, finding, "the response by Curtis Jones, and the response by Mr. Whitaker was outstanding and with(out) doubt saved this young child's life."
Finally, we must consider the age and intelligence of the swimmer, Teri Collins, as well. At the time of the accident Teri was 13 years old. Based upon her testimony and grades in school, she was found by the trial court to be of at least average intelligence. At trial, Teri testified that she had only one week of swimming lessons and did not consider herself a "swimmer;" however, she told her aunt that she could swim. Even so, she was aware of her own lack of skill and, at an age to know better, she defied her aunt's instructions and deliberately crossed under the rope into the deep end of the pool.
A directed verdict is properly granted when, after considering all evidence presented in the light most favorable to the moving party's opponent, the facts and inferences are so overwhelmingly in favor of a verdict for the movant, the court believes reasonable men could not have arrived at a contrary conclusion. La.C.C.P. art. 1810; King of Hearts, Inc. v. Wal-Mart Stores, Inc., 27,137 (La.App.2d Cir. 08/23/95), 660 So.2d 524; Whitaker v. Mullinax, 628 So.2d 222 (La. *824 App.2d Cir.1993); Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir.1979).
It is left to the discretion of the trial judge to determine whether or not to grant a motion for directed verdict. The standard for appellate review of the trial judge's decision to grant or deny a directed verdict is whether, viewing the evidence submitted, reasonable men could not reach a contrary verdict. In addition, the appellate court must evaluate the propriety of a directed verdict in light of the substantive law related to the claims. Conrad v. Doe, 95-518 (La.App. 5th Cir. 11/28/95), 665 So.2d 542; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1st Cir. 03/11/94), 634 So.2d 466.
Viewing the evidence as a whole in a light most favorable to plaintiffs, we find that the facts and inferences lead us overwhelmingly to the conclusion that reasonable men could not have arrived at a verdict other than one finding that defendant, J.D. Whitaker, did not act negligently.

CONCLUSION
AFFIRMED at appellants' cost.
NOTES
[1] Teri testified at trial that she had in fact had only one week's worth of swimming lessons in which she had learned to dog paddle, and, in her own words, not very well. These swimming lessons were her only swimming experience prior to the accident.
[2] The legislature, by Acts 1996, 1st Ex.Sess. No. 1, added La.C.C art. 2317.1, which provides in part:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise or reasonable care, should have known of the ruin, vice, or defect which caused the damages, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.