CARAWAY, J.,
dissenting.
|¶ Cash Clay entrusted his home and pool in this case to Kinsha Walton (“Kinsha”) who he described as his girlfriend and living companion. They had resided together for about 5 years. Kinsha had adult children who also were familiar with their mother’s and Clay’s home. The home and pool are not claimed to have been defective in any manner. Therefore, Clay’s alleged negligence does not rest upon his property presenting an unreasonable risk of harm. With regard to the swimming pool itself, this court has observed:
A swimming pool, when properly used, is not unreasonably |?,dangerous and does not constitute an unreasonable risk of harm in most circumstances. The danger presented, the risk of drowning, is an open and obvious one.
Collins v. Whitaker, 29,324 (La.App.2d Cir.4/2/97), 691 So.2d 820, 823.
Clay, therefore, may be negligent because he breached a duty of care to the children at the party and their parents who dropped them off that day with Kin-sha. Before expressing that duty, it is important to understand that Clay’s pool had life jackets for the children, which in fact were used that day for the party. The victim was reported to have had one on, but had taken it off. The evidence also is undisputed that two other adults, Kinsha’s son and daughter, were at Clay’s home and present at the party. Additionally, the evidence shows that Kinsha had hosted prior parties for children at the residence.
Clay’s duty was to act reasonably in leaving his home and pool in the care of another person who also lives in the house. The undisputed facts are that he left his home in the care of his girlfriend and co-resident. In entrusting his home to Kin-sha, Clay knew that she had planned a swimming party, and he believed that her adult children would be present and that the children would wear life vests. All of these facts within Clay’s knowledge demonstrate to me that he was allowed to leave his residence under those circumstances. Such entrustment of the home to Kinsha for the party was not unreasonable. Clay’s choice for his actions is not unlike the choice of the children’s parents *958 who believed Kinsha to be a responsible adult. Yet, the tragic accident happened.
The majority appears to define Clay’s duty as extending to the affirmative action of giving a directive to Kinsha’s son, Derek, to be ^responsible for supervising the children around the pool. Clay may also be at fault in the majority’s eyes for having only “the mere expectation that Derek and Kimberly would be present at the party.” Yet, in fact, the evidence was that Derek and Kimberly were actually present around the pool during the party. With this view of Clay’s duty, the majority indicates that he would be exonerated of fault had he merely instructed Derek to super-' vise the children before he left his home.
The facts show that three adults and Kinsha’s 15-year-old daughter, Alexis, were responsible supervisors who were there watching for distressed children in the water and otherwise directing their actions. Supervision by Kinsha was her duty as an adult, and Clay would reasonably have expected Kinsha to supervise the children with the help of Derek, Kimberly, and Alexis.
The scope of protection (legal cause) inquiry is a question of policy whether the particular risk falls within the scope of the duty. Faucheaux v. Terrebonne Consolidated Gov’t, 615 So.2d 289, 292 (La.1993). In a case such as this where Clay’s decision to entrust his home and pool to his companion and co-resident involves uncontested facts, reasonable minds cannot differ over the policy-related question of legal cause. See Pitre v. Opelousas General Hosp., 580 So.2d 1151, 1160-61 (La.1988) (where the court lists factors for policy consideration). In his concurring opinion in Roberts v. Benoit, 605 So.2d 1032, 1060 (La.1991), a leading Louisiana Supreme Court case involving a claim of negligent entrustment, Justice Lemmon observed:
The extent of the scope of the duty is primarily a policy |4decision. On the facts in this record viewed in the light most favorable to the prevailing party in the trial court, I cannot find any ease of association between the duty breached and the injury that occurred.
In other swimming pool-related accidents, Louisiana courts have likewise not held the owner of the pool at fault in somewhat similar circumstances where the inadvertence of other adults was more directly responsible for a tragic drowning. Jones v. Maryland Casualty Co., 256 So.2d 858 (La.App. 1st Cir.1971); Collins, supra.
Here, Kinsha’s act of negligence was her failure to see the victim remove his life vest and return to the pool. Kinsha’s act of negligence for failure to supervise is in my opinion not within the scope of Clay’s duty of entrusting the pool to Kinsha.