50,976 (La.App. 2 Cir. 9/28/16)
**James E. RICHARDSON,**
**Plaintiff-Appellant**

v.

**ASI LLOYD'S, et al, Defendants-**
**Appellees**

**No. 50,976-CA**

Court of Appeal of Louisiana,
Second Circuit.

Judgment rendered September 28, 2016.

Rehearing Denied 11/10/2016

ANTHONY J. BRUSCATO, Counsel for Appellant

LAW OFFICES OF JASON P. FOOTE, LLC By: Jason P. Foote, Counsel for Appellees

Before BROWN, DREW & PITMAN, JJ.

PITMAN, J.

Plaintiff James Richardson appeals the judgment of the trial court rendered in favor of Defendants, Estate of Cash Clay and ASI Lloyd's, which found Plaintiff had failed to meet his burden of proof that homeowner Cash Clay was negligent in allowing his girlfriend, who could not swim, to hold a pool party at which Plaintiff's son drowned. For the following reasons, we affirm the finding of the trial court.

## FACTS

This case has been before this court previously on a motion for summary judgment granted in Defendants' favor in *Richardson v. Lloyd's*, 48,715 (La.App. 2 Cir. 3/26/14), 136 So.3d 953. The facts which follow are quoted from that opinion:

> On June 27, 2011, 12-year-old Jamarcus Hilliard attended a birthday party at the Sterlington residence of Cash Clay. During the party, Jamarcus, who could not swim, and eleven other children were permitted to play in and around the swimming pool located on the property

owned by Clay. In addition to Clay, the other residents of the household were his girlfriend, Kinsha Walton, and her three children, Kimberly Walton, Derek Walton and Alexis Walton. Kinsha and Alexis did not know how to swim, but Kimberly and Derek apparently could swim. Clay allowed Kinsha to host the children's party in his absence. During the party, Jamarcus drowned in the pool.

In an affidavit, Michael Douglas, the father of three children who were at the party, stated that he had arrived at the house shortly before the accident and that Kinsha was the only adult that he saw in the pool area. Douglas further stated as follows: that while he was speaking with Kinsha, some of the children began yelling that Jamarcus was in the deep end of the pool and wasn't coming up; Kinsha said she could not swim and asked Douglas to get the boy; although Douglas could not swim either, he jumped into the pool in an attempt to assist Jamarcus, but Douglas was unable to reach the boy and returned to the surface; someone then ran into the house to get Derek, who jumped into the pool and pulled Jamarcus out of the water, but he was already dead.

In her deposition, Kinsha Walton testified that when Douglas arrived, Derek, who was 20 years old, had just left the pool area and that Kimberly, who was deaf and in her 20s, was still near the pool. Walton stated that she was in the pool and speaking to Douglas when the children began yelling that Jamarcus didn't come up. Walton testified that after Douglas could not reach the boy, she asked Kimberly to get Jamarcus, but she indicated in sign language that she did not know what to do. Walton stated that Alexis called Derek, who removed Jamarcus from the pool and attempted CPR, but Jamarcus did not respond. Jamarcus was transported to St. Francis North Hospital, where he was pronounced dead.

Subsequently, the plaintiff, James Richardson, the father of Jamarcus, filed a petition for damages against the defendants, Cash Clay and his homeowner's insurer, ASI Lloyds. The defendants filed a motion for summary judgment and an exception of no right of action. The district court subsequently denied the defendants' exception of no right of action.

* * *

The court rendered judgment granting the defendants' motion for summary judgment and dismissing plaintiff's claims. The plaintiff appeals the judgment.

In that appeal, this court analyzed the evidence presented in support of the motion for summary judgment, including the deposition testimony of Defendant Clay, taken on September 13, 2012.[1] In the deposition, Mr. Clay testified that he knew Ms. Walton was planning a swimming party at his house and that she could not swim, but that her adult children, Derek and Kimberly, did know how to swim. He stated that Ms. Walton had not told him Derek and Kimberly would be at the party, but he knew they were always there when she hosted a pool party and that they would be there to "swim with the kids." He also stated that he did not know how many children had been invited or whether they could swim, but there were sufficient life vests in the pool area for both children and adults. He testified that he had instructed

---

**1.** Mr. Clay died after the remand of this earlier case and his succession has been substituted as Defendant in the instant case. His deposition was introduced at the trial, which resulted in the judgment that is the subject of this appeal currently at bar.

Ms. Walton not to let anyone in the water unless they had on a life vest. He stated that, when he returned to his home after receiving a phone call from Ms. Walton, she told him that Jamarcus had previously had on a life vest, but that he had taken it off and she did not see him get back in the water. He acknowledged that he was told that Derek had been inside and not at the pool when Jamarcus was seen underwater. He was also asked about Ms. Walton's drug use and charges against her. He denied that she was impaired on the day of the drowning.

In the earlier appeal, this court concluded that it was Mr. Clay's duty to act as a reasonable person under the circumstances. Therefore, there was a genuine issue of material fact regarding his breach of duty. The summary judgment was reversed and the matter was remanded.

Following remand, a supplemental and amending petition was filed on September 22, 2014, which contained allegations that the sole and legal cause of the accident was the fault and negligence of Mr. Clay for his 1) failure to provide reasonable and adequate supervision for the safety of children using his pool; 2) relying on Kinsha Walton, a nonswimmer, to supervise a group of young children who needed life vests to enter the pool; 3) breach of duty; and 4) failure to act as a reasonable person in leaving his home and pool in the care of another person.

A trial was held on April 21, 2015; and, since Mr. Clay had died, his deposition of September 13, 2012, was introduced into evidence as the first order of business.

Sergeant Darien Brown, investigator with the Union Parish Sheriff's Office, testified that he responded to Mr. Clay's house on the day of the incident and that he interviewed Ms. Walton about 30 minutes after the incident. They were sitting face-to-face at the kitchen table, and she was still very distraught. In the interview, she described the scene at the pool party and the drowning and told him that Mr. Douglas had attempted to help the victim, but was unable to since he also could not swim. She also described Derek's efforts to save Jamarcus and stated that he eventually had to use a pole to get him out of the deep end of the pool. When asked about whether he saw any signs of Ms. Walton being impaired, he said he did not. He stated that there was nothing about her that would have led him to believe that she was incapable of observing the 12 children who were in the pool, although she did confirm that she could not swim.

Captain Keith Blackman, supervisor of the criminal intelligence division of the Union Parish Sheriff's Office, testified that he responded to the scene of the drowning. He stated that he could not remember if he spoke to Ms. Walton that day. He responded negatively when asked whether he had any information that she was impaired at the time of the accident. He agreed that, if any officer had observed that she was drunk or impaired, it would have been noted in someone's report, because that would be a significant fact in any investigation involving an adult supervising a children's party.

Ms. Walton testified that her children, Derek and Kimberly, who could swim, were at the party, and that they were there to rescue anyone in a drowning situation. She stated that she gave each child a life vest regardless of whether he/she could swim. She had more than 12 life vests available, and she put Jamarcus in her own green and orange camouflage life vest since he was one of the older and larger children. She stated that, when the children told her Jamarcus was underwater, she first asked Mr. Douglas to help her. Her daughter Kimberly was also in the pool, but was "frozen" and unable to

help. She had signed to Kimberly to help, but Kimberly signed back that she did not know what to do. Derek ran out of the house and dove straight into the pool, but was unable to bring Jamarcus to the surface because he was too heavy. She was asked if she and Mr. Clay were comfortable with the fact that Kimberly and Derek could rescue someone who was drowning, and she replied affirmatively.

Ms. Walton further testified that she and all other adults at the party submitted to drug testing, and she admitted that her test returned with a positive result for marijuana. She stated that she was not told that a drug test would be necessary until four days after the party, and she immediately submitted to it. She testified that she was not under the influence of marijuana on the day of the drowning, but that she had used it 30 days before.

Derek Walton testified that he answered the telephone call when Mr. Douglas asked to borrow a life vest for his son since they were going fishing. He asked Mr. Douglas if he could go fishing with them, and Mr. Douglas agreed. He stated that the pool party was over and they were cleaning up by the time Mr. Douglas arrived. No one was in the pool when he went inside to change out of his wet clothes. He was in the kitchen getting a cupcake when he heard people screaming, and he looked out the window and heard people yelling, "He's at the bottom, he's at the bottom." The sliding doors were open, so he could hear very well what was being said. He ran out the door and saw Mr. Douglas on the steps of the pool. He stated that he jumped in the pool, but had not taken a deep enough breath the first time he went underwater and had to come up for air. However, on his second attempt, he was able to grab Jamarcus and pull him up to the middle of the pool and then he grab a pole that his mother was holding out to him.

Derek further testified that all of the children were wearing some sort of life vest, floaty or "safety device." He stated that he and Jamarcus got out of the pool at the same time and that Jamarcus had on a life vest. He also stated that he waited until all the children were out of the pool before he went inside to change to go fishing. He testified that he was at the pool the whole time before the children got out of the pool and that he did not know when Jamarcus reentered the pool. He stated his mother had not been smoking marijuana prior to the pool party, and he did not observe her showing any signs of being impaired in any way.

Yolanda Hilliard, Jamarcus's mother, testified that Plaintiff never claimed Jamarcus as his son. She stated that she had no doubt that Jamarcus was his son, but he never acknowledged or accepted him as his son. Plaintiff did not go to the hospital when Jamarcus died. He never gave her any child support and never visited Jamarcus when he was alive. Plaintiff would not even submit to a paternity test when she attempted to get child support from him, and the case was simply closed. She also testified that she had already settled with the insurance company for her claim and that she received, "Forty-five. The lawyer got fifteen." She admitted she was testifying that day because Plaintiff did not deserve a dime.

Plaintiff testified that he did not believe Jamarcus was his child, but that he did occasionally give Yolanda support. He stated that they had an on-and-off relationship because, at the time, he was in love with someone else. He also stated that one time he saw Jamarcus and his brother on the side of the road, barefoot, eating berries because they were hungry. He put them in his truck and took them to get some-

thing to eat and drink and then took them home. This incident took place shortly before Jamarcus died. He testified that Yolanda's propensity to move around was the reason he was unable to spend time with Jamarcus. He also testified that he borrowed money from a friend to pay Jamarcus's burial expenses.

The defense called Ms. Walton as a witness. She testified that Mr. Clay knew Derek and Kimberly were swimmers and had seen them swimming on a day-to-day basis. She stated that, on the day of the party, she told him she was having a birthday party, but did not mention that it was a swimming party. When Mr. Clay was leaving the house and children were arriving in their bathing suits, she asked him to give her the keys to the pool so the children could swim. She stated that he told her, "You got to be careful. Be careful with them kids in that pool." At that point, he left the house. She stated that he believed Derek and Kimberly were going to be at the party. She confirmed that Mr. Clay provided "multiple" life jackets for the pool, which were stored in the garage to protect them from the sun. She restated that all 12 children in the pool had on some sort of floatation device or life vest. She further stated that, when she saw Jamarcus get out of the pool, he had on her personal life vest. She also testified that Jamarcus's brother told her that Jamarcus had bet him that he could touch the bottom of the pool when her back was turned.

The available evidence was concluded, and the trial court left the record open for 45 days so that the trial deposition of Michael Douglas and Sgt. Ben Thomas could be taken.

Michael Douglas's deposition was taken on June 5, 2015, wherein he reiterated the facts to which he had previously testified concerning his presence at the house, his attempt to save Jamarcus and Derek's retrieval of the victim from the pool.

Sgt. Ben Thomas of the Union Parish Sheriff's Office testified that he responded to the scene of the accident, took pictures of the pool and sketched the pool with appropriate dimensions from the measurements he took. He spoke to the coroner at the hospital and to Jamarcus's mother that evening, but did not interview any of the Waltons or Mr. Clay.

Reasons for judgment were signed in August 2015, and the final judgment was signed in September 2015 denying Plaintiff the relief he sought. In the ruling, the trial court discussed liability and causation and stated that Plaintiff bore the burden of proving that Mr. Clay's conduct fell below the standard of care of a reasonable person in similar circumstances. It found there was no evidence that the pool itself was unreasonably dangerous or defective and addressed the issue of whether Mr. Clay was at fault in allowing Ms. Walton to host a pool party at his home in his absence.

The trial court's reasons for judgment reiterated the evidence presented at trial, including Mr. Clay's deposition, and stated that the facts within Mr. Clay's knowledge indicate that he was reasonable in leaving his home and pool and entrusting them to his live-in companion for the purposes of a pool party on that day. It stated that any acts of negligence by Ms. Walton or other supervising adults, in their supervision of the swimmers, i.e., that they did not notice when Jamarcus removed his life vest and reentered the pool, were not within the scope of duty owed by Mr. Clay when he allowed Ms. Walton to host a pool party.

The trial court also found that there was no evidence presented as to when Jamarcus reentered the pool or how long he was underwater; therefore, there was no evidence that "but for" Ms. Walton not being

a swimmer, this drowning would not have occurred. For these reasons, it found that Plaintiff had failed to prove that Mr. Clay was negligent or that he breached his duty to act as a reasonable person under the circumstances. Plaintiff appeals.

## DISCUSSION

Plaintiff argues that the trial court committed manifest error in failing to conclude that Mr. Clay was negligent since the evidence presented at trial showed the pool party was not adequately supervised by Ms. Walton, who could not swim and was known to abuse drugs. He also argues that he proved that that lack of adequate supervision caused or contributed to Jamarcus's death and that it was the negligence of Mr. Clay which was the ultimate cause of the drowning death of his son. Plaintiff contends that the trial court erred in failing to reach and decide the issues of causation and damages.

Defendants argue that the appropriate standard of appellate review in this case is the manifest error or clearly wrong standard of review. They argue that the trial is now over, the evidence has all been presented and the trial court has evaluated that evidence, judged the credibility of the witnesses, resolved all issues of fact and properly ruled within its discretion as the fact finder that Plaintiff failed to meet his burden of proof as to Mr. Clay's negligence. They also argue that there are no legal errors alleged by Plaintiff, so the appeal hinges on whether the trial court's judgment was reasonable based on the facts of this case as presented at trial.

■ In *Richardson, supra*, the earlier opinion rendered in this case, this court stated that, to determine liability in a negligence case, we apply the duty-risk analysis, which requires the plaintiff to prove that the defendant's conduct was a cause-in-fact of the resulting harm, that

defendant owed a duty of care to the plaintiff, that the duty was breached and that the risk of harm was within the scope of protection afforded by the duty breached. *Roberts v. Benoit*, 605 So.2d 1032 (La. 1991); *St. Hill v. Tabor*, 542 So.2d 499 (La.1989). Cause-in-fact is generally a "but for" inquiry, which requires plaintiff to show he would not have sustained injury but for the defendant's conduct. *Roberts, supra.*

■ Duty is defined as the obligation to conform to the standard of conduct associated with a reasonable person in like circumstances. *Wiley v. Sanders*, 34,923 (La.App. 2 Cir. 8/22/01), 796 So.2d 51, *writ denied*, 01–2661 (La. 1/11/02), 807 So.2d 235. The test to determine if a breach of a landowner's duty has occurred is whether, in the management of his property, he has acted as a reasonable person in view of the probability of injury to others. *Wiley, supra; Collins v. Whitaker*, 29,324 (La.App. 2 Cir. 4/2/97), 691 So.2d 820. In a negligence action, each inquiry must be affirmatively answered in order for plaintiff to recover. *Roberts, supra.*

■ In *Collins, supra*, the court stated that it is foreseeable that a landowner with a pool will allow others to enjoy it. A landowner or custodian owes a duty to his guests to discover any unreasonably dangerous condition or use of his premises and either correct the condition or warn of its existence. *Socorro v. City of New Orleans*, 579 So.2d 931 (La.1991). A swimming pool, when properly used, is not unreasonably dangerous and does not constitute an unreasonable risk of harm in most circumstances. The danger presented, i.e., the risk of drowning, is an open and obvious one. *Collins, supra.*

■ It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of

"manifest error" or unless it is "clearly wrong"; and, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court; but, if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell, supra.*

In this case, Plaintiff bore the burden of proving that Mr. Clay's conduct fell below the standard of care of a reasonable man under similar circumstances in allowing his girlfriend, in his absence, to host a pool party for children when she herself could not swim. The salient facts in this inquiry concern Mr. Clay's knowledge at the time he entrusted the pool to Ms. Walton and her two adult children. These include that, even though he was aware that Ms. Walton could not swim, he knew that Derek and Kimberly Walton could swim and that they were typically present when pool parties occurred and that they were present on the day of the party at issue. He also knew that there were adequate life vests available for adults and children at the party. He warned Ms. Walton to be very careful with children in the pool and insisted that the children not go in the pool without life vests.

Ms. Walton testified that she snapped each child in a life vest and personally put her own life vest on the victim before he entered the pool. Derek Walton also testified that the victim was wearing a life vest when he (Derek) exited the pool.

Despite Plaintiff's allegations that Ms. Walton was an irresponsible person who was accused of using drugs and, in fact, tested positive for marijuana when a drug test was performed four days after the drowning, she denied being intoxicated in any way at the birthday party; and the officers investigating the incident who spoke to her that day testified that she showed no signs of intoxication.

Although the facts of this case are tragic and a very young person lost his life, in deciding this case, the trial court stated that there was no evidence that "but for" Ms. Walton's not being a swimmer, this drowning would not have occurred. We also note that, as the trial court pointed out, children drown even when life guards are present. The trial court based its decision on reasonable evaluations of credibility and inferences of fact. After review, we cannot say the decision was manifestly erroneous or clearly wrong.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Defendants, Estate of Cash Clay and ASI Lloyd's, and against Plaintiff James E. Richardson is affirmed. Costs of the appeal are assessed against Plaintiff James E. Richardson.

**AFFIRMED.**

BROWN, C.J., dissents with written reasons.

BROWN, C.J., dissents.

The trial court concluded "that the facts within Cash Clay's knowledge indicates that he was reasonable in leaving his home and pool and entrusting same to his live-in companion for the purposes of a

pool party on that day." His girlfriend could not swim and had pending drug charges. Her two 20-year-old children, one of whom was hearing impaired, were not competent as supervisors/lifeguards.

This was an impromptu pool birthday party for a *five-year-old* neighborhood child. The party attendees were kids from the neighborhood who just showed up at Clay's home. Some of their parents were not contacted and did not know of the party. One parent, Michael Douglas, came over to borrow a life vest to go fishing and saw in the pool his three kids, all under 10 years old and unable to swim. Under these circumstances, it was unreasonable for Clay to not ensure that adults capable of supervision would be present.